Melinda Anne CREWS,
Plaintiff–Appellee,

v.

Donald Evans CREWS,
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Sept. 18, 1987.

Certiorari Denied by Supreme Court
Dec. 7, 1987.

William E. Boston, Paul E. Bates, Boston, Bates, Holt & Sands, Lawrenceburg, for plaintiff-appellee.

Jerry C. Colley, Columbia, Wayne Hairrell, Lawrenceburg, for defendant-appellant.

OPINION

TODD, Presiding Judge.

■ In this divorce case, the defendant, Donald Evans Crews has appealed, presenting five issues for review, of which the first is as follows:

Should a divorce be granted in the absence of corroborating testimony, where it is practical to obtain such corroborating testimony?

In *Fulford v. Fulford*, 156 Tenn. 640, 4 S.W.2d 350 (1927), the Supreme Court said:

(1) She testified to facts tending to show abandonment and refusal or neglect to provide as charged. Her testimony as to

abandonment was not, however, corroborated by any evidence, circumstantial or direct, on the hearing below. Publication was made for the defendant and a pro confesso taken against him. Both the Chancellor and the Court of Appeals were of opinion that a divorce should not be granted under the circumstances appearing upon the uncorroborated testimony of the complainant. The propriety of this conclusion is the only question raised upon the petition for certiorari.

Upon consideration of the matter, we are of opinion that the conclusion reached was correct. Such is the weight of authority. In many jurisdictions there is a statute so declaring the law. Where there is no statute the courts generally adhere to this rule.

It is thought that a different practice would encourage collusion. Section 4212, Thompson–Shannon's Code, requires that notwithstanding a divorce bill be taken for confessed "the Court shall nevertheless before decreeing a divorce hear proof of the facts aforesaid and then either dismiss the bill or grant a divorce as the justice of the case may require."

See 10 C.J., 133, R.C.L. 435, Note 25 L.R.A. (N.S.), and Note Anno.Cas. 1913B, 3, where many cases are collected.

(2) We do not intend to lay it down as an inflexible rule that under no circumstances shall a divorce be granted upon the uncorroborated testimony of one of the parties. A case may arise in which it would be impossible to procure corroboration, circumstantial or otherwise. In the case before us, however, the parties seem to have lived in a boarding house at New Orleans and it does not appear that it would have been a matter of any great difficulty for the complainant to have procured evidence corroborating her own at least as to part of the essential particulars. We think this is a case for the application of the general rule.

The full text of Thompson–Shannon's Code, Section 4212 was:

If the defendant admits the facts charged in the bill or petition and relied upon it as ground for a divorce, or the bill be taken as confessed, the court shall nevertheless, before decreeing a divorce, hear proof of the facts alleged as aforesaid, and either dismiss the bill or petition or grant a divorce, as the justice of the case may require.

The quoted code section appears in the present code as Section 36–4–114 with additional words, "excepting divorces sought on grounds of irreconcilable differences."

The quoted statute was applicable to *Fulford* because in that case the defendant was served by publication and a pro confesso (default judgment) was entered against him. Presumably, defendant was not present at the trial.

The statute is not applicable to the present case wherein the defendant answered, denying the charges of misconduct, and cross examined plaintiff and her witness.

Nevertheless, the opinion in *Fulford* also appears to adopt the holding of courts of other jurisdictions that, even without statutory provisions, the testimony of the complaining party generally must be corroborated.

In the present case, the plaintiff testified to the following:

The parties were married on June 12, 1962, have lived together since that date and have produced two children ages 23 and 12. From the beginning defendant drank a lot, stayed out a lot, was not at home, was not spending time with plaintiff, was not nice to her. He got drunk the first weekend after marriage. He demanded sex at least once a day, sometimes more, and became very angry when refused. He tried to have sex when intoxicated, but would pass out during sex. He criticized plaintiff continually. He repeatedly asked plaintiff to have a hysterectomy so their sex life would not be interrupted. He passed out on the sofa with a lighted cigarette in his hand. He lied to plaintiff. He took a $1,800 check from the business safe and cashed it.

Plaintiff's mother testified as follows:

Q. Now, back in the spring, Melinda at sometime, either around the end of March or the first of April, discussed with you about separating from Donald, or advised you that she was either thinking about it, or going to do it?

A. Well, I've been knowing for years that it would probably happen sooner or later, because the marriage wasn't working out, but it's been a few months back when she told me she finally was going to do it.

After plaintiff closed her proof, and defendant moved to dismiss, plaintiff was permitted to call defendant to testify. He testified as follows:

Q. Mr. Crews, did you take a bonus check that was made payable to Caperton Insurance and cash it and put it in your personal account?

A. Yes.

Q. What was the value, what was the amount of it?

A. Eighteen hundred ($1,800) dollars.

Q. Alright, now, if you would like to go ahead and explain it.

A. Okay, Melinda left me on the 7th day, that was Easter Sunday. Okay, on Wednesday morning, which was the 10th, that's the day she filed for divorce. And she told me before she left that morning that her mother was going to come to me and ask me to resign my position at the insurance agency. Okay, I didn't have any money at all in my account to amount to anything, maybe a couple of hundred dollars, and I knew I was going to need some cash. But the check had been in the vault, and I showed it to the girls and told them, they knew about the check being there, or should remember it. I took the check while she was gone that morning to the bank and cashed it and deposited it, and when she got back I told her what I did, and wrote her an IOU to the agency. Okay, and she didn't like that, or I could tell it upset her. So I took the check, put it back into the Caperton Insurance Agency.

. . . .

Q. Did you discuss the fact that you were taking the eighteen hundred ($1,800) dollars with anybody before you did it?

A. Not before I did it, no.

. . . .

Q. Now, Mr. Crews, do you think that in the past five years that you have drank excessively?

A. No, I don't think I've drank excessively.

. . . .

Q. Yes, Sir. Would you say it would be uncommon for you to have come under the influence of alcohol, at least three or four times, six times a month in the last five years?

A. I very seldom came, what you would say "under the influence". I drank, but I did not become staggering drunk, or drunk the way I look at drunk.

Q. Drunk is when you are staggering drunk?

A. Well, whatever.

In *Greene v. Greene*, 43 Tenn.App. 411, 309 S.W.2d 403 (1957), this Court affirmed a Chancellor's decree dismissing a divorce suit because complainant had failed to show grounds of jurisdiction or grounds of divorce. This Court affirmed on the ground that complainant's testimony was uncorroborated and said:

... we think the situation is controlled by the decision of the Supreme Court in *Fulford v. Fulford*, 156 Tenn. 640, 4 S.W.2d 350, which holds that a divorce should not be granted in the absence of corroborating testimony, where it is reasonably practical to obtain such corroborating testimony.

In *Edwards v. Edwards*, Tenn.App.1973, 501 S.W.2d 283, this Court affirmed the granting of a divorce. After quoting at length from *Fulford* and *Greene*, this Court said:

(5) In the present case, it can hardly be said that the testimony of plaintiff is without corroboration. Indeed, the defendant, herself, produced the most impressive evidence when she testified that she had promised never to see or talk to Andy Greer again but that she received a telephone call from him at work, lied to

her superior and her sister, met Greer by prearrangement, and spent 13 hours (7:00 to 2:00 and 2:00 to 12:00) riding around with him in a truck "just talking." Other aspects of plaintiff's case were corroborated by various members of the family who testified.

The rule of *Fulford v. Fulford* and *Greene v. Greene* does not require direct corroboration of every detail of the theory or insistence of the plaintiff, but evidence of facts and circumstances reasonably tending to indicate the truthfulness of the testimony being supported.

Corroborating evidence is evidence complementary to that already given and tending to strengthen or confirm it; additional evidence of a different character on the same point. Black's Law Dictionary, Fourth Edition, p. 414.

In 27A C.J.S. Divorce § 136, pp. 454 et seq. is found the following text:

> "It is settled that complainant's testimony is not required to be corroborated in every particular, but it is enough if corroborated as to material and controlling facts, or if the corroboration lends substantial support to complainant's testimony as to the controlling facts, or if the corroborating evidence tends in some degree to confirm the allegations relied on for a divorce.
>
> . . . .
>
> "The sufficiency of corroboration should be determined in the light of the purpose of the requirement for corroboration, which is the prevention of collusion, and in the absence of collusion or danger thereof, as in genuinely contested cases, the rule requiring corroboration is relaxed, and slight corroborative evidence may suffice. On the other hand, where the circumstances show a possibility of collusion, the degree of corroboration required rises proportionately.
>
> . . . .
>
> "The testimony of plaintiff may also usually be corroborated by that of defendant, in the absence of collusion, or by testimony as to admissions made by

defendant, . . ." C.J.S. 27A, pp. 455, 456, 458, 459.

The testimony of the plaintiff in this case was sufficiently corroborated.

In the present case, this Court is unable to say that the testimony of plaintiff was uncorroborated to any substantial degree. Plaintiff's testimony is corroborated by the testimony of defendant that he cashed a $1,800 business check, after which he said he promptly told plaintiff about it and made necessary adjustments to satisfy plaintiff; and the admission of drinking which he insisted was not excessive. The testimony of plaintiff's mother that she knew the marriage was not working out is some corroboration.

In *Dukes v. Dukes*, Tenn.App.1975, 528 S.W.2d 43, this Court affirmed a decree granting a divorce to the husband in spite of the lack of corroboration of his grounds where it did not appear that the acts and incidents complained of and relied upon were witnessed by any third parties and where testimony of the wife's violent temper did to some degree corroborate the husband's testimony of violent altercations between the parties.

This Court finds that the corroborative testimony of the mother of plaintiff and of defendant, himself, is sufficient to satisfy the rule requiring corroboration.

Moreover, this Court concludes that the purpose of the rule is satisfied in the present case by the strongly contested nature of the case and the active resistance offered by defendant. That is to say, there is no ground to suspect collusion of the parties and every ground to believe the opposite.

Appellant's first issue presents no reversible error.

■ Appellant's second issue is as follows:

> Once a divorce decree becomes final, can the trial court modify the division of the marital property ordered therein some five months later?

On March 5, 1985, the Trial Judge entered a judgment which provided as follows:

1. The plaintiff was awarded an absolute divorce.

2. The home was ordered to be sold. $28,815 of the proceeds was to be paid to plaintiff and the remainder divided between the parties.

3. The farm and equipment were awarded to defendant who was burdened with payment of indebtedness thereon.

4. Stock in Murray Ohio Manufacturing Co., United Nuclear Corp., Third National Bank and First National Bank were awarded to plaintiff.

5. Checking and Savings Accounts at First National Bank were awarded to plaintiff.

6. Two ⅛ interests in Caperton Insurance Agency were divided equally between the parties. However, this provision is followed by the following words:

> The Court appoints Tony Edwards, Attorney, as special master to determine the value of said interest.

7. Each party was awarded an automobile burdened with the payment of the indebtedness thereon.

8. Each party was required to pay one half of the indebtedness due on an automobile of their daughter.

9. $1,500.00 held in escrow as proceeds of the sale of a drill was awarded to defendant.

10. "As concerns the accounts receivable or heretofore received from Jerry Crews and O.A. Richardson, if the account resulted from rental of the realty described in Exhibit 1, it will be equally divided between the parties but, if that described in Exhibit 2, the proceeds will be the exclusive property of the defendant."

11. Defendant was ordered to pay to plaintiff $322.20 difference between taxes to be paid by defendant and insurance premium already paid by plaintiff.

12. Defendant was required to pay a $360 premium on insurance on farm equipment.

13. Defendant was ordered to irrevocably designate the children of the parties as beneficiaries of his life insurance.

14. Custody of the minor child with $80.00 per week support was awarded to plaintiff with reasonable visitation by defendant.

15. The parties were charged equally with medical and dental expenses of the child.

16. Defendant was permanently enjoined from coming about or contacting plaintiff.

17. Plaintiff's maiden name was restored.

18. Defendant was taxed with costs.

It is seen that the finality of item 6, above, is clouded by the reference to a special master, and item 10, above, is not a final adjudication of the ownership of the asset mentioned therein.

The judgment shows on its face that all issues before the Court were not finally concluded. Therefore, the judgment was not appealable as of right and was subject to revision by the Trial Court at any time before entry of a final judgment adjudicating all the claims, rights and liabilities of the parties. T.R.A.P.Rule 3(a).

On April 3, 1986, defendant filed a notice of appeal from said judgment and a bond for costs on appeal. There is no evidence that a record was timely transmitted to this court as a result of said notice of appeal and bond. If said transmission had taken place, the appeal would have been dismissed as premature.

Appellant's second issue therefore presents no reversible error.

■ Appellant's next issue (2b) is as follows:

> If the trial court can modify the final decree thusly, is it equitable that the consideration for the property the defendant is ordered to sell to consist of funds to which he is already entitled?

On February 4, 1987, the Trial Court entered a further judgment from which the present appeal was taken. Said judgment contained the following:

It duly appears to the Court that the report of the special master C. Anthony Edwards was never excepted to and that he was qualified in Open Court as an expert witness. It further appears to the Court that the parties have been unable to divide their furniture and appliances and the defendant has failed to account for proceeds received from rent of the parties' realty described in Exhibit 1 to the original divorce decree. It further appears to the Court that based upon the testimony of the parties and that of the special master in addition to his report, that the value of the defendant's one-eighth (⅛) interest in Caperton Insurance Agency is Twenty three thousand one hundred forty nine ($23,149.00) dollars and that the realty described in Exhibit 1 to the original decree should be sold. It is, accordingly

ORDERED, ADJUDGED AND DECREED as the report of the special master, C. Anthony Edwards is accepted by the Court as well as his findings and based upon his report the value of the defendant's one-eighth (⅛) interest in Caperton Insurance Agency is found to be Twenty three thousand one hundred forty nine ($23,149.00) dollars.

. . . .

It is further ORDERED, ADJUDGED AND DECREED that as concerns the accounts receivable from O.A. Richardson and Jerry Crews, the defendant will provide an accounting to the Court as to the status of the accounts receivable from the time of the filing of the original divorce as concerns the property described in Exhibit 1 to the original divorce decree in this cause of action.

It is further ORDERED, ADJUDGED AND DECREED that the realty described in Exhibit 1 to the original divorce decree will be sold as expeditiously as possible and in the event the parties are unable to sell same by private sale, it will be listed and sold at public sale not later than April 15, 1987 and from the proceeds of said sale, the expenses incurred since the filing of the original complaint for repair and maintenance of the residence will be deducted as well as property taxes due, the sum of $1,500.00 to be paid to C. Anthony Edwards, special master and realtor commissions and the balance will be divided equally between the parties after paying the Petitioner the sum of Twenty three thousand eight hundred fifteen ($23,815.00) dollars in accordance with the prior judgment in this case and payment to Mr. Crews of the sum of Twenty-three thousand one hundred forty nine ($23,149.00) as representative of his one-eighth (⅛) interest in Caperton Insurance Agency after which any interest of the defendant in said agency will be divested out of him and vested into the Petitioner.

It should be noted that the third quoted paragraph referring to accounts receivable from O.A. Richardson and Jerry Crews does not finally dispose of the matters mentioned therein and that the judgment is not a final judgment appealable as of right for this reason. T.R.A.P. Rule 3(a). However, the particular paragraph is not the subject of any complaint on appeal. In view of the advanced stage of the proceedings in this appeal, the infirmity is waived and the appeal will be disposed of on its merits.

Returning to the discussion of issue 2(a), appellant's complaint is that, by the last quoted paragraph, above, it was ordered that the home be sold, and after payment of $23,815 of the proceeds to plaintiff as previously ordered, the additional sum of $23,149.00 be delivered to plaintiff as payment of the purchase price of defendant's one-eighth interest in an insurance agency, and that the remaining proceeds be divided equally.

Appellant insists correctly that, by using the proceeds of the sale of the jointly owned home to pay him for his interest in the business, in effect he received only one half of the price of his interest because the other half of the price came from appellant's share of the proceeds of the home. The consideration for the transfer of appellant's share in the business should have been paid by plaintiff's funds, and not funds owned jointly by the parties.

The judgment is modified to delete therefrom the following words:

... and payment to Mr. Crews of the sum of Twenty-three thousand one hundred forty nine ($23,149.00) dollars....

And in lieu thereof the following is substituted.

... however, the sum of $23,149.00 shall be withheld from the portion due the plaintiff and paid to the defendant ...

Appellant's next issue (2c) is as follows: If the appellant is ordered to sell his interest in a partnership, is he entitled to the proportionate share undistributed profits in that partnership?

The transcript reflects that, at the conclusion of the trial on December 12, 1985, counsel for defendant stated:

I would ask the Court to appoint a Special Master, somebody who has some expertise, who can—according to the standard in the industry, as to how they are appraised, to do that for the Court. And let him do it entirely independently, with no—nothing except go in and do it the way they do it.

Trial Judge responded:

Alright. I'll appoint somebody and let you all know who it is.

Thereafter, on March 5, 1986, the first judgment was entered containing the appointment of the Special Master to determine the value of "said interest" in the insurance business.

On March 11, 1986, the Special Master filed his report.

The record contains no objection of defendant to the Master's report. On April 4, 1986, the plaintiff moved the Court "to act upon the Master's report."

On August 12, 1986, there was a hearing before the Trial Judge in which counsel for defendant orally questioned the accuracy of the Master's report because, it was alleged, the Master disregarded substantial bank accounts in the name of the business representing undistributed profits.

The last judgment entered by the Trial Court, above quoted, states that the Master's report was "never excepted to", and the report and findings therein were "accepted by the Court."

It is evident that the Trial Court "adopted" the report within the meaning of T.R.C.P. Rule 53.04(2).

This Court is not authorized to disturb a concurrent findings of a master and chancellor. T.C.A. § 27–1–113.

However, the record has been examined and is found to support the findings of the Master and Chancellor.

The last balance sheet of the insurance agency, dated August, 1985, shows the following:

| Cash | 100.00 | | |
|---|---|---|---|
| Bank | 75,922.99 | Acct. Pay. | 77,928.20 |
| Super/Now | 52,790.75 | WH Tax | 188.00 |
| Acct/Recv | 77,170.51 | Proprietorship | 136,460.33 |
| Furn & Fixt | 8,592.28 | | 214,576.53 |
| | 214,576.53 | | |

The "proprietorship" item is the net worth of the business, that is, total assets reduced by total liabilities. The assets include the bank accounts (undistributed profits) which are the basis of defendant's complaint on appeal.

According to the Master's testimony, the book value represented the "floor" of evaluation; and the Master's valuation was a much larger amount, $256,312.00, based upon the past and projected future profits of the business. However, this figure was reduced by a management factor to $217,-865, which is far in excess of the "book value". One-eighth of $217,865 is $27,233 which the master further discounted for marketability of a minority interest to $23,-149. This amount is far in excess of one-eighth of "book value" which would be $17,057.71.

No error is found in appellant's issue 2(c).

Appellant's third issue is as follows:

Does stock belonging to the wife at marriage but thereafter transferred to the husband as a gift revert to the wife as separate property upon divorce?

It is clear from the evidence that the transfer of the stock was not a gift but a trust deposit. The stock was placed in the name of defendant to allow him to vote in the shareholder's meetings and to become a director of the corporation. The finding of the Chancellor in this respect is supported by the preponderance of the evidence and will not be disturbed. T.R.A.P. Rule 13(d). T.C.A. § 36-4-121.

No error is found in appellant's issue 3.

■ Appellant's issue 4 is as follows: Are stock splits and dividends, which accrued during the marriage from separately held stock, a portion of which was used jointly, income to be divided jointly upon divorce?

T.C.A. § 36-4-121(b)(1) provides:

"Marital property" means ... including income from any increase in value during the marriage, ... if each party substantially contributed to its preservation and appreciation....

At marriage, plaintiff owned certain shares of Murray Ohio Manufacturing Company. During the marriage, plaintiff used part of the cash dividends for household expenses, and deposited the remainder in a separate, personal, bank account. During the marriage, the value of the stock increased materially. There is no evidence that defendant in any way contributed to the preservation or appreciation of the value of the stock. Therefore, the stock and all profits and increments attributable thereto were the separate property of plaintiff. T.C.A. § 36-4-121(b)(2).

■ Appellant's last issue (No. 5) is as follows:

Why should appellee be allowed to recover her contribution to the marital home over and above her equal share if the appellant is not?

The evidence shows that the $23,815 which was to be paid to plaintiff out of the proceeds of sale before division represented monies received by her from her fa-

ther's estate and invested in the home. On the other hand, appellant claims credit for the fact that the land upon which the home was constructed was furnished by his parents. The deed from the parents conveyed the land to both plaintiff and defendant, thereby indicating a gift to both plaintiff and defendant. Moreover, a part of the consideration for the transfer was $10,000 paid to defendant's sister out of the joint funds of the parties.

The evidence does not preponderate against the finding of the Trial Judge that the home was joint property except for the $23,815 obtained by plaintiff from her father's estate.

The judgment of the Trial Judge is modified in respect to the source of the $23,815 to be paid to defendant for his ⅛ interest in the business as heretofore set out in detail. As modified, the judgment is affirmed. Costs of this appeal are taxed equally, that is, each party shall pay one half. The cause is remanded for further proceedings.

Modified, affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.