# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

FILED

January 28, 1998

Cecil Crowson, Jr.

Appellate Court Clerk

ELLEN MARIE MUZI MARCUS,          )
                                  )
    Plaintiff/Appellee,           )          Shelby Circuit No. 149744 R.D.
                                  )
v.                                )
                                  )          Appeal No. 02A01-9611-CV-00286
LOUIS EDWARD BERG MARCUS,         )
                                  )
    Defendant/Appellant.          )


## APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE


### THE HONORABLE ROBERT L. CHILDERS, JUDGE


For the Plaintiff/Appellee/Appellant:          For the Defendant/Appellant/Appellee:

Kay Farese Turner                              Stevan L. Black
Charles W. McGhee                              Kimberly Harris Jordan
Memphis, Tennessee                             Memphis, Tennessee


**AFFIRMED IN PART, REVERSED
IN PART AND REMANDED**


HOLLY KIRBY LILLARD, J.


CONCURS:

W. FRANK CRAWFORD, P.J., W.S.


DAVID R. FARMER, J.

**OPINION**

This is a divorce case. Both parties appeal certain determinations regarding child support, alimony, the division of property, and attorney's fees. We affirm in part, reverse in part and remand.

Defendant/Appellant Louis Marcus ("Husband") and Plaintiff/Appellee Ellen Marcus ("Wife") were married for approximately twenty years, and had a fifteen year old son, Daniel. At the time of the divorce, Husband was fifty-eight years old and Wife was fifty-two years old. Husband stipulated that he was at fault for the divorce based on inappropriate marital conduct.

At the time of the marriage, Wife had a college degree and a masters degree in library science. Wife's work history during the marriage was sporadic. At various times during the marriage she was employed as a librarian, a program director for a public television station, a secretary, a substitute teacher, and an owner of a small needle work business. Many years during the marriage Wife earned little or no income. Since November of 1994, Wife has been employed in a clerical position by Memphis University School ("MUS"), a private boys' school, and earns approximately $1,500 per month. Because Wife is employed by MUS, the parties' son's tuition at MUS is free. In addition, Wife earns approximately $450 per month from a sewing business that she owns.

Husband has a college degree and has been the primary wage earner for the family. Throughout the marriage, Husband was primarily involved in the retail clothing business. Husband was employed by Majestic Athletic Wear ("Majestic") in Pennsylvania in 1987. Ultimately Husband was promoted to President, and earned an annual salary of $185,000 plus bonuses. Husband's employment with Majestic was terminated in 1992. Husband then accepted a job in Memphis as Senior Vice-President of Sales and Marketing for Wang's International ("Wang's"). In this position, he earned between $125,000 and $150,000 but his employment at Wang's was terminated in 1994. After a search for other employment, Husband formed his own Internet business, Magibox Incorporated ("Magibox"). Husband owns ninety (90%) of the shares of Magibox. The parties dispute Husband's earnings from Magibox. Husband testified that he draws $4000 per month from Magibox. Wife asserts that Husband began drawing at least $8,000 per month from Magibox, and that this amount dropped to $4,000 per month after the parties had a discussion about child support and alimony.

Following an extensive hearing, the trial court divided the marital estate so that Wife would receive approximately sixty percent of the marital property and Husband would receive approximately forty percent. Husband was obligated to make monthly child support payments of $1,185, based on the trial court's determination that his "earning capacity" equaled $97,200. In addition, Husband was ordered to pay Wife alimony payments of one thousand dollars per month for three years. Husband was also ordered to maintain a $100,000 life insurance policy for three years for the benefit of Wife in order to secure the child support and alimony payments. Finally, the trial court ordered Husband to pay Wife $20,000 as a "partial award" for attorney's fees. From this order, both parties appeal.

On appeal, Husband contends that the trial court erred in basing his child support obligations on his earning capacity instead of his actual income. Husband argues that the trial court utilized the earning capacity figure without making a threshold determination that he was willfully and voluntarily underemployed. Husband also challenges the trial court's allocation of the marital estate. He asserts that the estate was divided inequitably and that many of the determinations made to assess the value of the estate were based on improper calculations.

Husband further contends that the award of rehabilitative alimony was error. He also challenges his obligation to maintain a $100,000 life insurance policy. Husband argues that this amount of life insurance secures more than his alimony and child support obligations and is not feasible in light of his financial status. Finally, Husband maintains that the trial court erred in awarding Wife attorney's fees.

On appeal, Wife argues that the trial court erred by not awarding her permanent alimony. Wife also contends that the trial court erred in classifying certain stock as marital property instead of separate property owned by Wife.

Husband first argues that the trial court erred in awarding child support based on his earning capacity rather than his actual earnings, where there was no threshold finding that he was willfully and voluntarily underemployed. Our review of a child support order is *de novo* on the record. The trial court's findings are presumed correct, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

2

In setting child support, courts look to the guidelines promulgated by the Tennessee Department of Human Services. Tenn. Code Ann. § 36-5-101 (1996). Under the guidelines, the amount of child support is calculated based on a percentage of the obligor spouse's net income. Tenn. Comp. R. & Regs. 1240-2-4-.03 (1994). The percentage for one child is twenty-one percent of the net income. *Id.* The guidelines further state:

> If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience.

*Id.* § 1240-2-4-.03(d).

In determining Husband's child support obligation, the trial court's Final Decree states that "based on Defendant's past earning history, the Court finds that he has an earning capacity of at least ninety-seven thousand two hundred dollars per year ($97,200)." Based on this finding, child support payments were set at $1,185 per month, which is approximately twenty-one percent of $97,200. The trial court's oral ruling also indicates that the child support award was determined after "considering the earning capacity" of Husband.

Husband argues that the trial court erred by basing his support payments on his earning capacity rather than his actual net income because the trial court failed to make an initial finding that he was "willfully and voluntarily unemployed or underemployed." *Id.* Husband argues that there is no evidence in the record that he has been willfully or voluntarily underemployed. In fact, Husband maintains that he made efforts to seek employment before starting his own business, Magibox, approximately two years before the hearing. He contends that for the past nine months he has drawn only $4,000 per month from Magibox, and that his yearly net income is $48,000.

Wife argues that there was sufficient evidence for the trial court to conclude that Husband had hidden income and that he actually made more than $48,000. Wife notes that Husband drew $8,000 per month from Magibox, during June and July, 1995, and claims that this amount decreased only after the parties had a conversation regarding child support in the course of an attempted mediation of their divorce. Wife also points to evidence in the record that Husband had made business deductions for personal expenses. She emphasizes that the trial court's determination of child support was based on its assessment of the credibility of the parties.

The trial court's award of child support in this case was clearly based on Husband's "earning capacity" or potential income, rather than hidden income. The trial court does not allude to an

3

alleged attempt by Husband to disguise his actual net income. Instead, the trial court refers to Husband's "past earning history." Indeed, the record does not clearly show that Husband had "hidden income" in Magibox; Wife's own expert admitted at trial that he could not identify other money in Magibox available to Husband. The $97,200 figure utilized by the trial court in calculating child support reflects a finding of earning capacity or potential income, rather than hidden income.

Nothing in the record indicates that the trial court determined that Husband was "willfully and voluntarily" underemployed. Tenn. Comp. R. & Regs. 1240-2-4-.03(d). In fact, the record does not contain evidence that would support such a finding. To calculate a child support award based on earning capacity rather than actual net income, there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed. *Id.; Stephenson v. Stephenson*, No. 01A01-9212-CH-00488, 1993 WL 298908, *4 (Tenn. App. Aug. 6, 1993). Consequently, the trial court's award of child support payments in the amount of $1,185 must be reversed.

Husband argues that his annual net income is $48,000, based on monthly draws of $4,000 from Magibox. Consequently, he proposes that he should be obligated to pay $614 per month, based on the guidelines. The trial court's findings of fact do not include a determination of Husband's actual net income. The record contains conflicting evidence regarding Husband's actual income and assertions of hidden income. Therefore, we remand this case to the trial court to determine Husband's actual net income and make an award of child support based on Husband's actual net income rather than potential income or earning capacity.

Husband next appeals the trial court's division of the marital estate. The trial court allocated approximately sixty percent of the estate to Wife and forty percent to Husband.

A property division award is reviewed *de novo* with a presumption that the trial court's factual findings are correct, unless the preponderance of the evidence is otherwise. *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. App. 1989); Tenn. R. App. P. 13(d). The trial court's division will be altered only if the trial court misapplied the law or if the evidence preponderates against the trial court's finding. *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. App. 1994).

In *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. App. 1990), it was held that the "ownership of the marital estate should be presumed to be equal unless proven otherwise." Our

4

Court has also stated in **Barnhill v. Barnhill,** 826 S.W.2d 443, 449 (Tenn. App. 1991):

> [M]arital property should be equitably divided without regard to fault. An equitable division, however, is not necessarily an equal one. The trial courts are afforded wide discretion in dividing the interest of parties in jointly-owned property.

In dividing the marital estate, trial courts are guided by the factors set forth in Tennessee Code Annotated § 36-4-121 (1996). This statute states that the trial court should consider factors such as the length of the marriage, the age, employability, and earning capacity of the parties, and the contributions of each party to the marriage. *Id.*

Husband contends that these factors indicate that the estate should be divided equally. Husband notes the marriage lasted for twenty-one years, Husband is older and in poorer health than Wife, and Wife has a more advanced education. Husband also maintains that the trial court erred by determining his earning capacity to be $97,200 per year rather than the $48,000 per year he currently makes.

The evidence preponderates in favor of the trial court's division of the property. The record indicates that Wife essentially gave up her career during the marriage. At the time of trial, she was earning a monthly income of $1,1583.33 while working for MU S; this benefits both parties because Daniel may attend the school with free tuition. The evidence clearly demonstrates that Husband enjoys a greater "earning capacity" than Wife and that Husband has a far greater ability to accumulate "future acquisitions of capital assets and income." Tenn. Code Ann. § 36-4-121(c)(2) and (4). Therefore, the trial court did not err in its overall equitable division of the marital estate.

Husband also disputes several aspects of the trial court's division of the property. Husband first challenges the trial court's valuation of Magibox. The court valued the business at $84,000 and awarded ninety percent of this amount ($75,600) to Husband since he owns ninety percent of the business. The trial court's valuation was based on an appraisal of the business performed by Wife's expert, David Harris ("Harris"). Harris appraised the business by using sixty percent of the company's asset value and forty percent of its earnings value. Harris used only the last eight months of Magibox's earnings, annualized to a period of one year, to calculate its earnings value.

Husband alleges that the trial court erred by relying on Harris' appraisal. He cites **Blasingame v. American Materials, Inc.,** 654 S.W.2d 659 (Tenn. 1983), for the proposition that the trial court should have considered only Magibox's asset value. **Blasingame** discusses three different valuation methods: the asset value method, the earnings value method, and the market value method.

*Id.* at 665-67. The parties agree that, in the present case, market value should not be considered since Magibox is a closely held corporation. *See Wallace v. Wallace,* 733 S.W.2d 102, 107 (Tenn. App. 1987).

Husband asserts that **Blasingame** holds that asset value is the only method of valuation that should have been considered in this case. **Blasingame** states that "any valuation of earnings that does not take into consideration a minimum of three years corporate earnings experience should be rejected, unless the expert opinion clearly and convincingly establishes the validity of a lesser period." **Blasingame,** 654 S.W.2d at 665. Since Magibox had not existed for three years at the time of trial, Husband maintains that Harris' appraisal does not "clearly and convincingly" demonstrate that the use of the earnings value method for a lesser period was accurate. *Id.* Husband emphasizes that Harris used only the last eight months of earnings, even though Magibox had existed for twenty-two months at the time of the trial.

Because the valuation of marital property is a question of fact, the "trial court's decision with regard to the value of a marital asset will be given great weight on appeal." **Wallace,** 733 S.W.2d at 107. After reviewing the record, we find that there is sufficient evidence by which the trial court could have "clearly and convincingly" found that Harris' appraisal was based on an adequate length of time. To explain his use of earnings value as forty percent of his valuation of Magibox, Harris testified:

> Earnings . . . generate the primary value in a business. A business is just an investment, and the only thing the shareholders have to look to is either a liquidation of the assets or a future earnings or dividends; . . . so if the company is making money, generating earnings, even for a short period of time, that can't be ignored.

The fact that Magibox is primarily a service company with minimal tangible assets must be a factor in determining whether the use of the earnings is appropriate. Moreover, the risk of utilizing earnings value in light of the company's short earning history is ameliorated by the fact that earnings value was only forty percent of Harris' overall valuation. Husband had ample opportunity to cross examine Harris and provide countervailing expert testimony. Considering the record as a whole, sufficient evidence exists to support the trial court's decision to value Magibox based on Harris' appraisal.

Husband also challenges the trial court's decision to include a $3,750 loan to Magibox in the marital assets awarded to Husband. This figure equals the remainder of a $17,500 loan that

6

originated from Smith Barney that had not been paid back as of the date of the trial. Husband contends that this loan was also considered by Wife's expert, Harris, in appraising Magibox. Thus, Husband argues that the value of this loan was erroneously counted twice in determining the amount awarded to Husband.

There is conflicting testimony on this issue. The record indicates that the trial court was made fully aware of the parties' arguments while rendering his ruling. Based on a thorough review of the record, we cannot conclude that the evidence preponderates against the trial court's finding that Harris' appraisal of Magibox included the $3,750 loan.

Husband next contends that the trial court erred by characterizing a debt owed to Magibox by one of its former customers as a marital asset and awarding it to Husband. At the time of trial, New Horizons, a customer, owed Magibox the sum of $10,000. Because Husband owns ninety percent of Magibox, the trial court awarded $9,000 of this debt to Husband. Husband asserts that this debt is not a marital asset but instead a business asset owed to the company, and that it is contingent since it was in litigation.

Wife counters that throughout the litigation she characterized the debt as a marital asset. From our examination of the testimony of Wife's expert Harris on his appraisal of Magibox, this debt was not included as a business asset. Had this debt been included as an asset of Magibox, the valuation of Magibox would have increased by $10,000. Therefore, any error by the trial court in characterizing this debt as a marital asset rather than business debt is harmless.

Husband next contends that the trial court erred by considering the gross value of a joint bank account owned by the parties, even though the parties stipulated that the net value should be used. The parties maintained a joint bank account with Prudential Securities that had a gross value of approximately $59,828. Both parties were responsible for a loan against the account in the sum of approximately $17,452. Husband claims that the parties stipulated that the net value of $42,376.18 should be used. However, the trial court in its Final Decree, calculated the account based on gross value and assigned $38,639.91 of the account to Husband and $21,188.09 of the account to Wife. In its oral ruling, the trial court also held that Husband was responsible for the $17,452 debt against the account. As a result, Husband contends that he received less than a forty-three percent share of the marital estate contemplated by the trial court.

7

In discussing the percentage of the marital estate awarded to each party, the trial court stated only, "I have those figures roughly at about almost fifty-seven percent of the assets, marital assets to Mrs. Marcus and about forty-three percent to Mr. Marcus." Without considering the debt, Husband was allocated 43.3% of the marital estate. After factoring in the debt, Husband was allocated 39.6% of the estate. Nevertheless, the record clearly indicates that counsel for the parties discussed the debt with the trial judge while the ruling was made. The trial court was aware of the issue regarding the debt and the valuation of the account in making its ruling, and we find that the trial court's determination on this issue was not error.

Husband also contends that the trial court erred by valuing a Union Planter's Bank account assigned to him at $1,752.89. This value was appraised by Wife's expert, Harris, approximately one month before the trial. A few days before the trial, Husband filed a Rule 14 affidavit which listed a balance of $284 in the account. Husband argues that the trial court erred by not relying on the value closest to the date of the hearing as set forth in Tenn. Code Ann. § 36-4-121(b)(1)(A).[1]

However, apart from Husband's Rule 14 affidavit, the record contains no documentation of a balance in the account other than the $17,752.89 utilized by Harris. The trial court did not abuse its discretion in determining that Harris' valuation of the account was more credible than Husband's valuation.

Husband argues that the trial court erred by failing to award him certain items of artwork of the marital estate, contrary to the parties' stipulation.[2] In *Mast Advertising & Publishing, Inc. v. Moyers*, 865 S.W.2d 900, 903 (Tenn. 1993), the Court stated that "[l]egitimate stipulations that are within the range of possibly true facts and valid litigation strategies cannot be ignored or cast aside." The Court held that "stipulations will be rigidly enforced by the courts of this State." *Id.* In its

---

[1] This provision states as follows:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and *valued as of a date as near as reasonably possible to the final divorce hearing date*.

Tenn. Code Ann. § 36-4-121(b)(1)(A) (emphasis added).

[2] Wife argues in her brief that there was no stipulation, but the record reflects a stipulation.

ruling, the trial court did not specifically address the artwork; it appears to be included in the trial court's ruling that Wife would be awarded "[a]ll furnishings, furniture, household goods, accessories and appliances located in the marital residence." Since nearly all of the artwork had remained the marital home in Wife's possession, this resulted in Wife being awarded the artwork, contrary to the parties' stipulation. The record does not include a valuation of the artwork. Therefore, the record does not indicate that allocating the artwork in accordance with the parties' stipulation would materially alter the overall property division allocation implemented by the trial court. Consequently, we modify the property division to award the artwork in accordance with the parties' stipulation.

Both parties appeal the trial court's award of rehabilitative alimony to Wife in the amount of $1,000 per month for three years. Husband contends that Wife should not receive any alimony whatsoever. Husband notes that Wife has a Master's degree and has been in the workforce for some time. He observes that the trial court stated in its oral ruling that Wife is capable of finding a better job than her current one. Husband also maintains that his ability to pay is less than perceived by the trial court, in light of the trial court's determination that his earning capacity was $97,200.

Wife argues on appeal that she should have been awarded permanent alimony. She emphasizes that she was fifty-two years old at the time of the trial, has been sporadically employed, was accustomed to living comfortably, and that Husband stipulated that he was guilty of inappropriate marital conduct.

Appellate review of the trial court's award of alimony is *de novo* on the record with a presumption of correctness of its factual determinations. Tenn. R. App. P. 13(d). Decisions "concerning whether alimony should be awarded and, if so, the amount, depend upon the unique facts of each case." *Luna v. Luna,* 718 S.W.2d 673, 675 (Tenn. App. 1986). The intent of alimony is for "a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance." Tenn. Code Ann. § 36-5-101(d)(1) ( Supp. 1997).

In this case, the evidence supports the trial court's finding that Wife is capable of finding employment more lucrative than her current employment at MUS. However, both parties benefit from her current employment since their fifteen-year-old son is able to attend the school tuition-free. The evidence supports the trial court's award of rehabilitative alimony for three years as a reasonable

determination.

Husband also appeals the trial court's mandate that he maintain a $100,000 life insurance policy for three years to secure his alimony and child support obligations. Husband argues that this obligation is excessive for a fifty-eight year old man with a heart condition. He reiterates the trial court's error in calculating the amount of the child support award, and notes that the policy amount exceeds the amount that the policy was intended to secure. Husband also asserts that the trial court erred by failing to provide for a gradual decline in the policy amount as his support obligations decrease.

In light of our reversal and remand for a determination of the appropriate amount of child support, we also reverse the trial court's ruling on the amount of the life insurance policy and remand for a determination of the appropriate amount in line with the recalculation of the child support.

Husband's final issue on appeal is the trial court's order that he pay $20,000 toward Wife's attorney's fees. Husband contends that this was inappropriate since Wife received $267,444 of the marital estate, had a separate estate in excess of $50,000, and is currently employed. Husband cites *Fox v. Fox,* 657 S.W.2d 747 (Tenn. 1983). In *Fox*, the Supreme Court held:

> The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel.

*Id.* at 749 (internal citation omitted).

Wife responds by citing *Hazard v. Hazard,* 833 S.W.2d 911, 917 (Tenn. App. 1991), which held:

> In the property division, Wife will receive approximately $118,000 and has only an earning capacity at present of about $35,000 per year. Husband, on the other hand, earns over $200,000 per year and has the educational background and training to increase his earnings considerably in the future. A large part of the marital estate awarded to Wife consisted of the furnishings of their home, and there were very few assets readily convertible to cash. Wife should not be required to spend the assets that could help as a future source of income in order to pay attorney fees.

"The decision to award attorney's fees to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Storey v. Storey,* 835 S.W.2d 593, 597 (Tenn. App. 1992). In the present case, the preponderance of the evidence does not indicate that the trial court abused its discretion by

10

requiring Husband to compensate Wife for a portion of her attorney's fees. Wife's earning capacity is substantially less than Husband's, and Husband stipulated that he was at fault for the parties' divorce. In addition, Wife should not be required to deplete her assets that could "help as a future source of income." *Hazard,* 833 S.W.2d at 917.

On appeal, Wife asserts that the trial court erred in classifying certain stock dividends obtained after the marriage as marital property. Prior to the marriage, Wife separately owned 894 shares of Old Forge Bank stock. This amount increased by 823 shares during the marriage in the form of stock dividends. During this time, the bank issued both stock dividends and cash dividends to its shareholders. The trial court found that the 894 shares of stock owned before the marriage was separate property owned by Wife and that the 823 shares resulting from dividends were marital property. These 823 shares were valued at $47,734 ($58 per share) and assigned to Wife.

Section 36-4-121 of the Tennessee Code provides that "income from and appreciation of property owned by a spouse before marriage" is separate property unless the other spouse "substantially contributed" to the stock's "preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B) and (b)(2)(C). The statute further states that " 'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager." *Id.* § 36-4-121(b)(1)(C).

Wife cites *Sherrill v. Sherrill,* 831 S.W.2d 293 (Tenn. App. 1992), and *Crews v. Crews,* 743 S.W.2d 182 (Tenn. App. 1987), in support of her assertion that Husband did not contribute in any way to the appreciation of these shares. In *Sherrill,* the Court affirmed the trial court's decision that the wife's contribution as a homemaker did not have any "direct or indirect connection whatsoever to the preservation and appreciation" of the stock at issue. *Sherrill,* 743 S.W.2d at 295.

In *Crews,* the wife owned separate shares of stock before the marriage. *Crews,* 743 S.W.2d at 189. During the marriage she accumulated cash dividends from this stock. *Id.* She used a portion of these dividends to pay for household expenses and deposited the remainder in a personal bank account. *Id.* Concluding that the stock and its profits were separate property, the Court found "no evidence that (the husband) in any way contributed to the preservation or appreciation of the value of the stock." *Id.*

11

The issue of spousal contribution is a question of fact, and the trial court's factual finding will be upheld unless it is against the preponderance of the evidence. *Sherrill,* 831 S.W.2d at 295; Tenn. R. App. P. 13(d). In this case, Husband was the primary "wage earner" and served in some capacity as a "financial manager" for the family. *Id.* § 36-4-121(b)(1)(C). In addition, the stock was pledged as collateral when Husband started a business in Colorado. Furthermore, the cash dividends from the Old Forge Bank stock were placed in a joint account. There is evidence from which the trial court could conclude that taxes for the dividends were paid by marital funds. Overall, we cannot say that the evidence preponderates against the trial court's finding that Husband contributed to the "preservation or appreciation" of the stock or the classification of the stock dividends as marital property. Thus, the trial court did not err in classifying these stock dividends as marital property.

In sum, the trial court's award of alimony and attorney's fees are affirmed. The property division is modified to award the artwork in accordance with the parties' stipulation; the remainder of the property division is affirmed. Because the award of child support was based on Husband's earning capacity rather than his actual earnings, without a threshold determination that Husband was willfully and voluntarily unemployed or underemployed, the award of child support is reversed. The cause is remanded for a determination of Husband's actual earnings and a commensurate award of child support. The trial court's order that Husband maintain a $100,000 life insurance policy is reversed because it was based in part on the child support award, and the cause is remanded for the trial court to determine an appropriate amount for the life insurance policy in light of the revised child support award.

The decision of the trial court is affirmed in part, reversed in part and remanded. Costs on appeal are taxed to both parties equally, for which execution may issue if necessary.


_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**

12