IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS APRIL 11, 2007

## RANDAL LOUIS MURDAUGH v. SVETLANA NICOLAEVNA SHKETIK (MURDAUGH)

**Direct Appeal from the Chancery Court for Madison County**
**No. 62940      James F. Butler, Chancellor**

————————————————

**No. W2006-01212-COA-R3-CV - Filed August 7, 2007**

————————————————

In this divorce case, the husband filed for divorce approximately five months after entering into marriage with the wife, an immigrant who had come to the United States from Latvia on a religious work visa. The husband resided in Madison County, Tennessee, and the wife and her son spent a majority of the duration of the marriage living in Cincinnati, Ohio, where the wife worked for a church and her son attended school. The chancellor awarded the wife temporary support and held a bench trial. The chancellor granted the parties a divorce based upon stipulated grounds and awarded the wife 25% of the value of the parties' marital property, as well as attorney's fees. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Svetlana Shketik, Cincinnati, OH, *pro se*

David A. Riddick, Jackson, TN, for Appellee

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

This is a divorce case. Randal Murdaugh ("Husband" or "Appellee") and Svetlana Murdaugh ("Wife" or "Appellant") met in the spring of 2003. Husband, who owns and manages twenty-eight rental properties, resides in Medon, Tennessee. Wife was born in Belarus, and she lived in Latvia prior to 2001, when she and her teenage son immigrated to Cincinnati, Ohio, on a religious work visa for the Church of Scientology. At the time that the parties met, Wife was working for the church and residing in a federally subsidized apartment in Cincinnati, and her son also attended school in Cincinnati.

The parties were married in Jackson, Tennessee, on October 4, 2004. Husband filed for a divorce from Wife on March 4, 2005, alleging irreconcilable differences and inappropriate marital conduct. Wife, apparently unrepresented by counsel at the time, filed a handwritten answer in which she disputed Husband's allegation that the parties had only cohabited for five weeks, claiming that they had been "living as a family for 6 months." On May 24, 2005, Wife filed a notice of retained counsel, Mr. Glassman, who later filed an answer and motion to dismiss, denying inappropriate marital conduct and alleging that Husband had submitted false information in his divorce complaint. Wife obtained an order of protection from general sessions court on September 6, 2005. On January 11, 2006, Wife filed a motion for temporary support and attorney's fees *pendente lite*. A hearing on this motion was held before the chancery court on January 27, 2006, after which the chancellor ordered Husband to pay Wife $750 in temporary support for the month of February, $500 for the months of March, April, and May, and $1,000 for Wife's attorney's fees. The chancellor also ordered that Husband pay Wife's dentist $1,000 for an outstanding bill for dental work. On February 3, Mr. Glassman filed a notice of withdrawal as Wife's attorney, and Ms. Middlebrooks filed her notice of appearance on Wife's behalf.

A bench trial on the divorce was held on March 1, 2006, at which Husband and Wife each provided testimony about the marriage. Prior to the hearing, the chancellor permitted Wife to orally amend her answer to assert a counter-complaint seeking a divorce on the grounds of inappropriate marital conduct, a division of marital property, alimony, restoration of her last name from birth, and attorney's fees and costs. On March 3, the trial court notified the parties of its decision by letter ruling. The ruling contained its statement of facts and conclusions of law. The chancellor's findings were as follows:

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The parties met in the spring of 2003. They ultimately married on October 4, 2004. Prior to the marriage Wife was present in the United States on a religious visa working for the Church of Scientology in Cincinnati, Ohio. Plaintiff has no other minor children. Defendant has one minor child. Plaintiff is a real estate investor. The parties married in Jackson, Tennessee. The next day, Wife returned to Cincinnati for which trip Plaintiff provided a vehicle, cell phone, and money. Wife's 15 year old child was in school in Cincinnati. The plan was for Wife to spend four days in Cincinnati and three days in Jackson each week. The plan obviously did not work. The proof is in dispute as to the amount of time Wife actually spent in Jackson with Plaintiff. In late November, 2004, Wife came to Jackson for a doctor's appointment in Memphis, then returned to Cincinnati. On December 17, 2004, Husband went to Cincinnati and retrieved the vehicle he had provided Wife. On December 21-22, Husband traveled to Cincinnati and brought Wife to Jackson. She and her son stayed until January 15, 2005. On that date, Plaintiff took Defendant and her son back to Cincinnati and returned to Jackson alone. On March 3, 2005, Wife returned to Jackson. On March 4, 2005, Husband filed for divorce. Thereafter, Husband provided dental care to the Wife costing approximately $4,000.00. At some point in March, 2005, Wife left the parties' residence and sought shelter in a "safe house" in Jackson. Wife alleged that Husband was abusive to her. Husband felt Wife was using him for money and to obtain a green card to enable her to stay and work in the United States. He further complained that she refused to give up her apartment in Cincinnati. The relationship did not seem to be going satisfactorily at that point. The parties apparently did not reside together after March, 2005, on any consistent basis. Wife claims all of her furniture in Cincinnati was stolen while she was in Jackson. Other than the furniture, Wife's assets at the date of marriage were her clothing and an old computer given to her by the Husband prior to marriage, and personal items. The Wife provided no income to the household during their time together. Her income prior to marriage was minimal. Wife left her job in Cincinnati to move to Jackson, but the marriage never seemed to take root. Ultimately, Wife returned to Cincinnati and remains there to this date with her son.

The trial court granted the parties an absolute divorce based upon Tenn. Code Ann. § 36-4-129, which provides for stipulated grounds and/or defenses. The court applied the statutory factors located at Tenn. Code Ann. § 36-4-121(c) and entered its order on marital property division. The court found that the real estate, bank accounts, certain personal property, and IRA were Husband's

separate property to which Wife held no interest. The court found that Wife's separate property consisted of clothing, personal property, and the computer which Husband had given her prior to the marriage.

The court found that the parties' marital property consisted of a 2005 Ford pickup truck, several items of furniture, and a plasma television, all of which were purchased during the marriage. All of these items were purchased by Husband during the marriage, and the trial court awarded them to Husband. Based upon evidence from the trial, the chancellor valued this property at $20,730, and it ordered Husband to pay Wife $5,182 for her interest in this property. Finally, the trial court denied Wife's general prayer for alimony, but ordered Husband to pay the temporary support as per the prior order, as well as $1,703.08 in alimony *in solido* for Wife's attorney's fees. On May 8, 2006, the trial court entered an order incorporating this ruling, *nunc pro tunc*, to March 3, 2006. Wife, acting *pro se*, filed a notice of appeal to this Court.

## II. DISCUSSION

Appellant, acting *pro se*, has waived oral argument on appeal, and she has filed an appellate brief with this Court. The section of her brief devoted to her statement of the issues presented for our review, however, provides only: "Chancery Court has allowed errors in [f]inal order in the [s]ummary of [f]acts and [r]uling of the [c]ourt." Appellant's argument section consists of several citations to the trial court's statement of facts in its final order, each of which is followed by her own brief explanation as to why said findings are incorrect. Appellant has not indicated how the judgment of the trial court was affected by these allegedly incorrect findings, nor has she cited a single authority in support of her purported argument. In her conclusion section, Appellant states: "For these reason [sic] the Appellant requests this Court to reverse the Chancery Court for new trial or review [f]inal [o]rder and make correction." It is difficult, given the state of Appellant's brief to this Court, for us to ascertain what aspects of the trial court's judgment are to be considered the subject of her present appeal.

Our review of a trial court's findings of fact is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d) (2006).

The Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals set forth rules regarding appellate practice, and specifically, the form and contents of a party's brief. ***Bean v. Bean***, 40 S.W.3d 52, 53 (Tenn. Ct. App. 2000). Rule 27(a) of the Tennessee Rules of Appellate Procedure states that an appellant's brief shall contain the following:

> (1) A table of contents, with references to the pages in the brief;
>
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

-4-

. . .

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on;

(8) A short conclusion, stating the precise relief sought.

Rule 6 of the Rules of the Court of Appeals of Tennessee provides in part:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the

argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Rule 15 of the Rules of the Court of Appeals of Tennessee provides specific requirements for briefs in domestic relations cases, where the issues involve the amount or the disposition of the marital property:

> The appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.
>
> If the appeal involves issues about the separate property of either party or the allocation of marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.

Wife's appellate and reply briefs do not satisfy these requirements. For good cause, we may suspend the requirements or provisions of these rules in a given case. *Bean*, 40 S.W.3d at 54. However, the Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court. *Id.* (citing *Crowe v. Birmingham & N.W. Ry. Co.*, 156 Tenn. 349, 1 S.W.2d 781 (Tenn. 1928)). This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter, to consider issues raised but not argued in the brief. *Id.* at 56.

Nonetheless, after a thorough consideration of the technical record and transcripts and exhibits from the proceedings below, it is clear that the evidence does not preponderate against the findings of the trial court that Appellant now alleges were erroneous. These findings by the trial court include the following:

> The plan was for Wife to spend four days in Cincinnati and three days in Jackson each week. . . . In late November, 2004, Wife came to Jackson for a doctor's appointment in Memphis, then returned to Cincinnati . . . . She and her son stayed until January 15, 2005. . . . Plaintiff took Defendant and her son back to Cincinnati and returned to Jackson alone. . . . At some point in March, 2005, Wife left the parties' residence and sought shelter in a "safe house" in Jackson. . . . Husband felt Wife was using him for money and to obtain a green card to enable her to stay and work in the United States. . . . He further complained that she refused to give up her apartment in

Cincinnati. . . . The parties did not apparently reside together after March, 2005, on any consistent basis.

Therefore, Appellant's assignments of error as to these findings are without merit.

To the extent that Appellant's argument could conceivably be understood to allege error with the final order of property division, we perceive only one of the findings cited by her to be relevant in this regard. The trial court found that "[t]he Wife provided no income to the household during [the parties'] time together." Apparently disputing this fact, Wife contends: "While living together, all the time Wife and her son worked on [Mr. Murdaugh's] properties, since he had no other employees. He owns 29 houses (citation to record omitted) and they constantly need up keeping [sic] and occupancy. This way there was input into income during the period they lived together." At trial, Husband testified that he owned twenty-nine houses in Tennessee, twenty-eight of which he maintained as rental properties. He testified that during the time of the parties' marriage, he performed no major remodeling and made no additions to these properties, but conducted only repairs and normal maintenance. Husband testified that Wife participated "a very small amount" in his rental business, by painting and cleaning cabinets. He stated that Wife's expenditure of labor on these tasks throughout the entire marriage amounted to a total of five or six hours. Although Wife also took the stand at the divorce hearing, she provided no testimony as to the amount or type of work that she performed on the rental properties.

Tennessee is a "dual property" jurisdiction because its divorce statutes draw a distinction between marital and separate property. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Since Tenn. Code Ann. § 36-4-121(a) provides only for the division of marital property, proper classification of a couple's property is essential. *Id.* Thus, as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably. *Id.* Regarding our review of a trial court's division of such property, the Middle Section of this Court has held:

> Tenn. Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Accordingly, a trial court's division of the martial estate is entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973), and should be presumed to be proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

*Id.* at 859. Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005).

-7-

"Separate property" is defined by statute as

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
> (E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
> (F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (2005). "Marital property" is defined as

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

Tenn. Code Ann. § 36-4-121(b)(1)(A) (2005). Marital property also "includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2005); *see also* ***Batson***, 769 S.W.2d at 856; ***Ellis v. Ellis***, 748 S.W.2d 424, 426-27 (Tenn. 1988); ***Crews v. Crews***, 743 S.W.2d 182, 189 (Tenn. Ct. App. 1987).

In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place. ***Batson***, 769 S.W.2d at 859. When relatively short marriages are involved, each spouse's contributions to the accumulation of assets during the marriage is an important factor. ***Id.*** When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best. ***Id.***

At trial, Wife did not dispute that Husband had purchased all of the rental properties before the parties were married. The trial court found that all of the real property owned by Husband prior to the marriage was his separate property. Property classification is a question of fact. ***Bilyeu v. Bilyeu***, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005) (citing ***Mitts v. Mitts***, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000)). The evidence does not preponderate against the trial court's finding that the twenty-nine houses were Husband's separate property.

Although the rental properties were Husband's separate property, income from these properties, or any increase in their value during the short marriage, would have been properly classified as marital property subject to equitable division if Wife could demonstrate that she had substantially contributed to their preservation and appreciation. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B) (2005). However, it is clear that Wife did not make such a showing at the trial below. She offered no proof contradictory to Husband's testimony that her work on the rental properties, approximately five or six hours' worth of painting and cabinet cleaning during the marriage, was minimal. Wife similarly offered no proof of any other income that she contributed to the household during the marriage. Therefore, we find Appellant's argument on this issue to be without merit and affirm the judgment of the chancery court.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the chancery court. Costs are assessed against Appellant, Svetlana Nicolaevna Shketik (Murdaugh), for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE