# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

EDWARD RAY JOHNSON, SR.,          )
                                  )
    Plaintiff/Appellant,          ) Shelby Circuit No. 141899 R.D.
                                  )
VS.                               ) Appeal No. 02A01-9609-Cv-00217
                                  )
TOMMYE KAYE JOHNSON,              )
                                  )
    Defendant/Appellee.           )

**FILED**

May 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE GEORGE H. BROWN, JR., JUDGE

**STUART BRIAN BREAKSTONE**
**LAW OFFICE OF DON OWENS, P.A.**
Memphis, Tennessee
Attorney for Appellant

**ASA H. HOKE**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED IN PART AND REVERSED IN PART**

           **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this divorce case, Tommy Kaye Johnson ("Wife") filed for divorce from Edward Ray Johnson ("Husband") on the grounds of inappropriate marital conduct and irreconcilable differences. The trial court granted both parties a divorce and ordered Husband to pay $800.00 per month in rehabilitative alimony for eighteen months. The trial court awarded custody of the parties' three minor children to the Husband and ordered Wife to pay child support. Wife was awarded the Hadley Street duplexes, and Husband was awarded the Limewood residence, the Oak Park property and the Clayphil property. Each party was allowed to keep all items of personal property currently held in their possession. The trial court equally divided the parties' account at Boatman's Bank which contained the parties' remaining fire insurance proceeds. The trial court declined to award Wife a portion of the Husband's retirement account and ordered each party to pay their own attorney fees. Husband appeals the judgment of the court below arguing that the trial court erred in its division of the real property, in its division of the fire insurance proceeds, and in its award of rehabilitative alimony. For the reasons stated hereafter, we reverse the judgment of the court below as to the award of the Clayphil and Hadley properties and as to the award of the fire insurance proceeds and affirm the judgment of the trial court in all other respects.

**FACTS**

On June 14, 1989, the parties married and on March 19, 1993 Wife filed for divorce. This was the second marriage for the Husband and the seventh marriage for the Wife. In May 1996 at the time of trial, Husband was sixty-four years of age, and Wife was forty.

Husband attained his bachelor's degree in architecture from the University of Illinois in 1958, received his architecture license in 1963 and earned his master's degree in philosophy from Memphis State University in 1974. Husband taught an architecture class at State Technical Institute of Memphis ("State Tech") for seventeen years. Before retiring from his job at State Tech, Husband's salary was approximately $40,000.00 per year.

2

Wife, on the other hand, has not attained any college degrees. Before marrying Husband, Wife worked as an architectural draftsman at Professional Service Industries and attended Husband's architecture class at State Tech. After the parties married, Wife quit her job at Professional Service Industries and began working part-time. Wife's jobs during the marriage included working in Husband's architecture business and working for a roofing consultant firm.

While working for the Husband's business, Wife drafted plans, performed electrical repairs, and served as the administrator of certain projects. Wife worked for Husband's business in 1989, 1990, 1991 and 1992. At trial, Husband testified that the most he ever made in a year from his architecture business was $10,000.00 and that Wife was working for him the year he made that amount. Husband further testified that during the years that Wife worked in his business she performed less than fifty percent of the work. Wife was not paid a salary for the work she performed for Husband's business.

The parties were married thirty days after Wife received a divorce from her sixth husband. Upon divorcing her sixth husband and marrying her seventh husband, Wife's assets included a $2,100.00 to $2,500.00 savings account, stereo equipment, televisions, a bedroom suite, sofas and other furniture.

Upon entering the marriage, Wife had two minor children from previous marriages, ages 10 and 12. Shortly after the marriage, Wife's sister, who lived in Alabama with her three minor children, informed Wife that she could no longer support her children. After visiting the three children, a four year old and 1 year old twins, Husband and Wife decided that they wanted to care for them. In December 1989, the three children were placed in the physical custody of Husband and Wife. Later, in June 1991, Husband and Wife adopted Wife's sister's three minor children.

Instead of sending the children to public schools during the first of the marriage, Wife taught the children at home. During the latter part of the marriage, the parties sent

3

the children to public schools, and Wife monitored the children's progress with their homework.

Before the parties' marriage in February 1987, Husband acquired the Oak Park property. At the time of the marriage in June 1989, the mortgage balance due on the property was $64,396.29. After the parties' marriage, Husband paid a portion of the $64,396.29 mortgage on the Oak Park property with marital assets. However, Husband testified that he paid the majority of the $64,396.29 mortgage balance with proceeds from his own separate retirement income. Sometime in 1993, Husband paid the entire mortgage balance on the Oak Park property.

During the marriage, Wife helped maintain the Oak Park property. Wife swept the property when it flooded, fixed an electrical outlet and repaired the air conditioner on the property. At trial, the parties stipulated that this property had a market value of $76,000.00 and that this property was without a mortgage.

Seven months before the marriage in November 1988, Husband purchased the Clayphil property. Wife testified that since the marriage in June 1989, all mortgage payments on the Clayphil property have been made from joint marital funds. Wife further testified that she performed extensive work on the Clayphil property throughout the course of the marriage including painting, cleaning, mowing the lawn, building a fence, clearing the land and performing the plumbing, electrical and air conditioning repairs. The parties stipulated that the market value of the Clayphil property was $54,000.00 and that the mortgage on the property was $41,000.00.

In September 1989, Husband purchased the residence located at 6358 Limewood. Husband paid $25,000.00 in cash as a down payment on the property and signed a $5,000.00 promissory note. The $25,000.00 cash down payment on the property came from the separate funds of the Husband except for $2,000.00 to $3,000.00 which came from the Wife's separate property. The Limewood residence became the primary marital

4

residence of the parties. Moreover, the Limewood residence has been the only house wherein Allen, Dusty and Sandy have lived since they have resided with the parties.

During the marriage, Wife helped maintain the Limewood property. Wife painted, wallpapered the bathrooms, installed new countertops, and helped supervise the enclosure of the carport and the addition of a bedroom onto this residence. At trial, the stipulated market value of the Limewood property was $62,500.00; and the mortgage on the property was $32,500.00.

In September 1992, the parties purchased two duplexes on Hadley Street. Part of the money for the purchase of the Hadley property came out of the parties' joint account, and $46,500.00 of the purchase price for the Hadley property came from the sale of Husband's separate property on Finley Street. However, before the Finley Street property was sold, Wife testified that she helped maintain the Finley property and that marital funds were used to repair, remodel, paint and install sewer lines on the Finley property.

Wife also helped maintain the Hadley property. Wife painted the Hadley Street duplexes, helped with the yard work and collected the rent. According to the testimony adduced at trial, the market value of the two Hadley duplexes was $77,000.00; and the joint mortgage on the two Hadley properties was $25,000.00.

The day after Thanksgiving 1992, the parties' home on Limewood caught fire. The parties thereafter received approximately $58,500.00 in insurance proceeds from their insurance company to compensate them for the damage from the fire. Prior to trial, approximately $40,000.00 in fire insurance proceeds was divided between Husband and Wife for different items that were lost in the fire. At the time of trial, approximately $23,000.00 of the parties' fire insurance proceeds remained in the parties joint bank account.

Husband testified that $30,488.50 of Wife's separate personal property was

5

destroyed by the fire and that prior to trial Wife had received $30,820.50 in fire insurance proceeds. Husband further testified that $33,097.50 of his separate personal property was destroyed by the fire and that prior to trial he had received $9,160.50 in fire insurance proceeds.

During the marriage, rent money from the parties' rental property went into the parties' joint account.

At trial, Wife testified that she helped maintain the Clayphil property, the Oak Park property and the Finley Street property prior to the marriage. However, when Husband was asked how much the Oak Park, the Clayphil, the Limewood, the Finley and the Hadley Street properties had increased in value during the marriage due to the work that Wife had expended on the properties, Husband testified that according to his tax records, the property values either remained constant or declined during the marriage.

Nonetheless, during the marriage, Wife served as the primary caretaker for the children, and Husband worked in his architecture business. Wife also continued her architectural schooling at Memphis State University throughout part of the marriage. In August 1992, Wife withdrew from her classes at Memphis State University due to complications with her pregnancy.

At trial, Wife requested that the court award her $800.00 per month in rehabilitative alimony. Wife stated that such an award would enable her to complete her college education and attain a bachelor of science degree in architectural technologies. With a bachelor's degree in architectural technologies, Wife could then acquire her architect's license.

At the time of trial, Husband had retired, and Wife was working as a temporary employee at St. Jude's Research Hospital making fourteen dollars per hour. Due to her temporary status at the hospital, Wife's job was scheduled to terminate on June 30, 1996.

6

## LAW

The following three issues are before this Court:

1) Whether the trial court erred in its division of the real property;

2) Whether the trial court erred in its division of the fire insurance proceeds; and

3) Whether the trial court erred in awarding the Wife rehabilitative alimony in the amount of $800.00 per month for eighteen months.

In actions for divorce, courts shall "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." T.C.A. § 36-4-121(a)(1). Trial courts are afforded wide discretion in adjusting and adjudicating the parties' rights and interests in all marital property. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983); Barnhill, 826 S.W.2d at 449; Harrington v. Harrington, 798 S.W.2d 244 (Tenn. Ct. App. 1990); Thompson, 797 S.W.2d at 604; Batson, 769 S.W.2d at 859. Accordingly, a trial court's distribution of marital property will be given great weight on appeal and will be presumed correct unless the evidence preponderates otherwise. Barnhill, 826 S.W.2d at 449-50; Thompson, 797 S.W.2d at 604; Batson, 769 S.W.2d at 859; Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Edwards v. Edwards, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973); Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984).

While the courts must divide all of the parties' marital property, they are not required to award both parties an interest in each piece of marital property. Thompson, 797 S.W.2d at 604. T.C.A. § 36-4-121(a) and § 36-4-121(f)(1) permit trial courts to divest and reinvest title to property and to make distributive awards in order to achieve equity. Id.

In making an equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training, or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner, or parent;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

T. C. A. § 36-4-121(c).

A trial court's division of marital property is guided by the aforementioned factors contained in T. C. A. § 36-4-121(c). However, an equitable division of a parties' marital property is not necessarily an equal one. Barnhill v. Barnhill, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991); Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990); Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

In accordance with T.C.A. § 36-4-121(c)(1), trial courts consider the duration of the marriage when making an equitable division of marital property. In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place. Batson, 769 S.W.2d at 859.

As this Court stated in Batson, each spouse's contributions to the accumulation of assets during the marriage is an important factor when a relatively short marriage is

8

involved. Id. When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best. Id.

Because T.C.A. § 36-4-121(a) allows only for the equitable division of marital property, it is necessary for the trial court to classify the property, to give each party their separate property and to divide the remaining marital property. Batson, 769 S.W.2d at 856. T.C.A. § 36-4-121(b) provides the rules for classifying property, and little elaboration is needed beyond the statute itself. Id. Separate property is defined as:

> (A) All real and personal property owned by a spouse before marriage;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

T.C.A. § 36-4-121(b)(2) (1996).

T.C.A. § 36-4-121(b)(1) defines marital property as:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage . . . [including] income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation.

In accordance with the statute, marital property includes the increase in value of separate property "if each party substantially contributed to its preservation and appreciation." Ellis v. Ellis, 748 S.W.2d 424, 426-27 (Tenn. 1988); Batson, 769 S.W.2d at 856; Crews v. Crews, 743 S.W.2d 182, 189 (Tenn. Ct. App. 1987).

Because Husband acquired title to the Oak Park property over two years before the parties' marriage in February 1987 and paid the majority of the remaining $64,396.29 mortgage on the property after the marriage with proceeds from his own separate retirement account, the trial court did not err in awarding the Oak Park property to

9

Husband.

Similarly, the trial court did not err in awarding the Limewood residence to Husband. At trial, the parties had accrued $30,000.00 in equity in the Limewood property. Upon purchasing the property in September 1989, Husband paid $25,000.00 as a cash down payment on the property and signed a $5,000.00 promissory note. With the exception of $2,000.00 to $3,000.00 which came from the Wife's separate property, Husband paid the entire $25,000.00 cash down payment with his own separate property. Thus, because the majority of the equity in the Limewood residence came from the Husband's separate property, the trial court did not err in awarding the Limewood estate to the Husband.

We disagree, however, with the trial court's award of the Clayphil and Hadley properties. The parties purchased the two duplexes on Hadley Street during the marriage in September 1992. At trial, the parties had accrued $52,000.00 in equity in the two Hadley duplexes. A total of $46,500.00 of the equity in the Hadley properties came from the sale of Husband's separate property on Finley Street. Moreover, Husband purchased the Clayphil property seven months before the marriage in November 1988. Since the parties' marriage in June 1989, all mortgage payments on the Clayphil property have been paid with joint marital funds. At the time of trial, the parties had accrued $13,000.00 in equity in the Clayphil property. Because of the short duration of the parties' marriage, because the majority of the equity in the Hadley properties came from the sale of Husband's separate property on Finley Street, and because most of the equity in the Clayphil property came from the parties' marital property, we hold that an award of the two Hadley duplexes to the Husband and an award of the Clayphil property to the Wife would provide for a more equitable distribution of the parties' marital property. We, therefore, reverse the order of the trial court as to the awards of the Clayphil and Hadley properties.

According to the testimony adduced at trial, $30,488.50 of Wife's separate personal property was destroyed by the fire of the parties' Limewood residence, and Wife has received $30,820.50 in fire insurance proceeds. A total of $33,097.50 of Husband's

separate personal property was destroyed by the Limewood fire, and Husband has received $9,160.50 in fire insurance proceeds. Based on the foregoing testimony, we hold that the trial court erred in equally dividing the parties' account at Boatman's Bank which contained the parties' remaining fire insurance proceeds from the Limewood fire. We hold that all remaining fire insurance proceeds shall go to the Husband.

T.C.A. § 36-5-101(d)(1) provides as follows:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient .

As noted by the supreme court in Self v. Self, 861 S.W.2d 360, 361 (Tenn. 1993), T.C.A. § 36-5-101(d)(1) reflects a clear legislative intent to allow an award for permanent alimony only "when the court granting the divorce finds that the economic rehabilitation is not feasible and long-term support is necessary."

In determining whether the granting of an order for payment of support and maintenance to a party is proper, the court shall consider all relevant factors, including:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in Sec. 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1).

Because Wife was forty years old at the time of trial and capable of rehabilitation, we hold that the trial court did not err in awarding Wife $800.00 per month in rehabilitative alimony so that she could attain a bachelor of science degree in architectural technologies and acquire an architect's license.

The judgment of the trial court is hereby reversed as to the trial court's award of the Clayphil and Hadley properties and as to the trial court's award of fire insurance proceeds and the judgment of the trial court is hereby affirmed in all other respects. Costs on appeal shall be divided equally between parties.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.