Linda Faith CATLETT,
Plaintiff–Appellee,

v.

Doug CHINERY d/b/a Hamilton Place Insurance, Balboa Life & Casualty Insurance Company, National Casualty Company, and Tammy Lepage Collins, Defendants,

and

United Companies Financial Corporation, d/b/a United Companies Lending Corporation, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Feb. 25, 1997.

Application for Permission to Appeal Denied by Supreme Court Sept. 15, 1997.

Jerry Woods Weeks, Chattanooga, for Defendant–Appellant.

William T. Alt, Elizabeth G. Alt, Chattanooga, for Plaintiff–Appellee.

## OPINION

SUSANO, Judge.

This suit finds its genesis in a January 14, 1994, fire that substantially damaged the mobile home of the plaintiff, Linda Faith Catlett. Ms. Catlett filed a complaint against two individuals and a number of companies, including the defendant United Companies Financial Corporation (United), seeking to recover for losses suffered as a result of the fire. Her complaint against United, the holder of the mortgage debt on her property, also sought a declaration that her obligation to United had been satisfied in full. United filed a counterclaim, which, among other requests, prayed that it "be permitted ... to enforce its ... lien against" the plaintiff's property. The Chancellor held that the plaintiff could not recover a monetary judgment against United. Among other rulings, some of which are not relevant to this appeal, the Chancellor accredited the testimony of the plaintiff and consequently found that "wrongful conduct" on the part of United "bars it from recovery against the plaintiff for any deficiency" on the mortgage debt. The Chancellor found that the evidence indicated United could have and should have recovered sufficient proceeds from an insurance policy issued by Balboa Life and Casualty Insurance Company (Balboa) to pay the mortgage debt in full. United appealed, arguing that the Chancellor erred when he

dismissed its counterclaim seeking to enforce the lien of its mortgage.

## I

In August, 1992, Ms. Catlett met with Steve Outlaw of United and requested a loan to consolidate the existing mortgages on her mobile home and lot. Based upon an appraisal of $66,200, United agreed to loan her $49,600. Mr. Outlaw advised Ms. Catlett that the lender required that the property be insured by a casualty policy. According to Ms. Catlett, Mr. Outlaw agreed, at her request, to obtain insurance for her. He told her that a portion of her loan payment would cover the premium for the insurance.

United proceeded to acquire insurance through Balboa.[1] The Balboa insurance policy provides coverage for physical loss or damage to structures on the property; however, it does not cover contents. Ms. Catlett testified that she had understood she was receiving "full coverage insurance", i.e., insurance against fire, theft, and accident, on the mobile home as well as her contents. Mr. Outlaw's testimony on this point was somewhat conflicting. He first stated that he did not remember what he had told Ms. Catlett about the kind of insurance United intended to purchase; however, he then testified that he generally advises borrowers to obtain separate coverage for their personal property, and that he had informed Ms. Catlett that the Balboa insurance would cover only structures.[2]

In September, 1993, a year after the loan was made, Ms. Catlett received a letter from United describing the policy that it had obtained through Balboa. The letter, which is also referred to in the record as a "notice of coverage", provides that the policy only insures against physical damage to structures, and not damage to personal property. Ms. Catlett contends that this was the first time she was aware that she did not have "full coverage." After receiving the letter, Ms.

Catlett sought additional coverage, but due to a family crisis, she was unable to apply for new coverage until the following January. On January 13, 1994, she signed an application with an insurance agent, Doug Chinery doing business as Hamilton Place Insurance,[3] and paid her initial premium. The following day, her home was substantially damaged in a fire caused by an electrical malfunction.

A claims adjuster, who was contacted by the adjuster retained by Balboa, determined that the cost to repair the damage to the mobile home was $49,242.47. Ms. Catlett was told that the Balboa policy required that she continue to make payments to United while repairs were being made, and that Balboa would not pay the total amount of the loss until the home was rebuilt. Ms. Catlett refused to have the damage repaired.

United received a payment on the policy from Balboa in the amount of $32,467.43. United then sought to enforce its mortgage lien in order to recover the balance of Ms. Catlett's obligation. United claims that it is entitled to recover $19,297.84, representing the balance of the loan, interest and attorney fees. As noted earlier, the Chancellor disagreed and found that United was not entitled to any relief, due in part to his finding that United should have recovered the full amount of the balance of the Catlett obligation from Balboa.

## II

In this non-jury case, our review is *de novo* upon the record with a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Hackett v. Smith County*, 807 S.W.2d 695, 699 (Tenn. App.1990); *Smith v. Jarnagin*, 58 Tenn.App. 668, 436 S.W.2d 310, 313 (1968).

■ The Chancellor's holding that United was precluded from recovering the balance of the loan from Ms. Catlett was based primari-

---

1. Originally named as a defendant in this case, Balboa settled with Ms. Catlett, and her complaint against the insurance company was dismissed by agreement.

2. The Chancellor believed Ms. Catlett's version of her discussions with Mr. Outlaw; however, this

determination of credibility is not directly pertinent to the basis of our judgment in this case.

3. Mr. Chinery was also a defendant in this case. The trial court awarded Ms. Catlett a judgment against him for $19,750. Mr. Chinery did not appeal.

ly on four grounds: first, he found that United had had a conflict of interest; that United wrongly failed to act as Ms. Catlett's agent, as it had agreed to do, when it secured insurance to protect its interest but not that of Ms. Catlett; second, that it made certain misrepresentations to Ms. Catlett; third, that United breached its obligation to Ms. Catlett to obtain meaningful insurance coverage on her behalf; and fourth, that the evidence showed United was entitled to recover and should have recovered from Balboa the full balance of the Catlett obligation owing as of the date of the fire. Because we find that the Chancellor's fourth rationale is sufficient to sustain his decision, we do not find it necessary to reach the other bases of the court's judgment or the issues raised by United with respect to those matters.[4]

■ A party seeking to enforce a mortgage obligation has the burden of proving the balance of the indebtedness. *State v. Holland,* 51 Tenn.App. 344, 367 S.W.2d 791, 797 (1962). Thus, in order to enforce its mortgage lien, United is required to prove by a preponderance of the evidence that there is a balance owing on the mortgage debt after application of the proceeds that were due from Balboa under the terms of the fire insurance policy. We find that the evidence does not preponderate against the Chancellor's determination that United failed to prove that there was a balance due, i.e., failed to prove that it had recovered all that it was entitled to recover under the Balboa policy.

At the time of the fire, there was a balance due on Ms. Catlett's note of approximately $47,000. As previously noted, the amount paid by Balboa was only $32,467.43. The notice of coverage letter received by Ms. Catlett in September, 1993, provides that the maximum amount of coverage under the Balboa policy is $59,000. The policy contains the following pertinent provisions:

### III. LIMITS OF RECOVERY

The maximum amount of coverage applicable to a risk insured hereunder shall be the net loan balance or previous insured amount as reported by the Insured.

The liability of the company shall not exceed the least of the following after the applicable deductible stated in this Policy:

A. The amount of coverage shown on the coverage letter [i.e., $59,000];

B. The replacement cost of that part of the building or dwelling and other structures for equivalent construction and use on the same premises; or

C. The amount which it would cost to repair or replace the damaged or destroyed real property with material of like kind and quality within a reasonable time after the loss.

The policy also provides that

[w]hen the cost to repair or replace the damage is more than $1000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, [Balboa] will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

Trudy Rushing of United testified that since Ms. Catlett did not repair her mobile home after the fire, Balboa was only obligated to pay the "replacement cost" and not the "actual cash value." She opined that this was the reason United accepted $32,467.43, the amount of the loss determined by Balboa. We find her reasoning flawed and her justification for accepting the lesser amount unpersuasive.

■ The Balboa policy was obviously issued for the purpose of giving United some measure of protection with respect to the recovery of its debt in the event of a fire or other specified casualty event. At a minimum, Balboa was obligated under the policy for the lesser of four amounts: $59,000; "replacement cost"; "cost to repair or replace"; or the balance of the loan at the time of the casualty event. Neither "replacement cost" nor "cost to repair or replace" are defined in the policy. While they are stated separately, they both include the concept of replacement cost. One uses the word "replace"; the oth-

---

4. On this *de novo* review, we are called upon to pass upon the correctness of the trial court's judgment, and "not necessarily the reasoning employed to reach the result." *Shelter Insurance Companies v. Hann,* 921 S.W.2d 194, 202 (Tenn. App.1995).

er uses a derivative of the word. In our opinion, the provision is ambiguous. That ambiguity is to be construed against the drafter of the policy, Balboa. *See Gredig v. Tennessee Farmers Mutual Insurance Company,* 891 S.W.2d 909, 912 (Tenn.App.1994). Because of this ambiguity, we find that United was entitled to the lesser of three amounts—$59,000, the cost to rectify the damage done by the fire, or the balance of the loan. While the policy may have attempted to state a fourth alternative, it failed to do so in an intelligible manner.

The Chancellor apparently concluded that $49,242.47, the cost to repair the fire-damaged portion of the mobile home, or the balance due on the Catlett obligation, whichever amount was less, was the amount to which United was entitled under the terms of the policy. The appellant is not correct when it argues that Balboa did not have to pay anything until the plaintiff repaired the structure. That is not what the policy says. The policy clearly provides that the insurer will pay *"no more* than the actual cash value of the damage until actual repair or replacement is completed." (Emphasis added). The plaintiff is not contending that Balboa should have paid "more"; but rather that it should have paid the "actual cash value of the damage," or the loan balance, whichever was less. Since the cost of repairing the structure was $49,242.47, the evidence does not preponderate against the Chancellor's finding that United failed to show that the full amount of its mortgage loan due at the time of the fire, i.e., approximately $47,000, was not covered by the Balboa policy. The plaintiff should not be penalized because United failed to recover an amount sufficient to pay its loan in full—a recovery to which United was entitled under the terms of the Balboa policy.

There is no indication in the record that United conducted any independent investigation or calculation of the amount of the loss, or the correct amount due under the policy. In fact, Ms. Rushing stated that United completely "relied on Jack Howlett," the adjuster hired by Balboa, who pegged the loss at $32,467.43. She was unaware whether anyone at United had even read the policy to check the accuracy of Howlett's calculations or to make any assessment of their own as to the amount owed by Balboa. In fact, there is no evidence that anyone at United questioned Howlett's determination in any way.

Furthermore, the record offers little indication as to who at United was responsible for accepting Balboa's offer of $32,467.43 as payment on the claim. Ms. Rushing stated her belief that Dale Quick, a senior vice president at United, had reached an agreement with Balboa to accept that amount. Mr. Quick, however, testified that he had not spoken with anyone at Balboa about adjusting the loss, and that he did not know who at United had reached the agreement with Balboa. Quick did sign a hold harmless agreement on behalf of United, which was provided to Balboa "so that the loan would be paid off." He testified that he signed the agreement only in his capacity as an officer of the corporation, and that he had no knowledge of the surrounding circumstances. Thus, we are left with the fact that United accepted the amount of $32,467.43 from Balboa, but with no satisfactory explanation as to why it did not recover the full amount due and owing on the mortgage at the time of the fire.

Given the lack of proof on this issue, we cannot conclude that the evidence preponderates against the Chancellor's findings. There is substantial evidence to suggest that United was entitled to recover the full balance of Ms. Catlett's loan under the Balboa insurance policy. Therefore, the Chancellor properly concluded that United had not carried the burden of proof necessary to recover the balance of the mortgage, and enforce its lien. Because we find this rationale sufficient to sustain the Chancellor's decision, we deem it unnecessary to consider his additional findings, which involve the representations made by United to Ms. Catlett with regard to the extent of coverage, and the obligation of United to secure meaningful coverage on her behalf.

The evidence does not preponderate against the Chancellor's determination that United should not be permitted to enforce the lien of its mortgage. If there is no balance due on the loan, there can be no lien.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant. This case is remanded to the trial court for enforcement of its judgment and collection of costs assessed there, pursuant to applicable law.

GODDARD, P.J., and SANDERS, Special Judge, concur.