IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

February 19, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

JACK DAVIS,                          ) C/A NO. 03A01-9708-CH-00381
                                     )
          Plaintiff-Appellant,)
                                     )
                                     )
                                     )
v.                                   ) APPEAL AS OF RIGHT FROM THE
                                     ) UNICOI COUNTY CHANCERY COURT
                                     )
                                     )
                                     )
                                     )
CLANETTA B. DAVIS,                   )
                                     ) HONORABLE THOMAS J. SEELEY, JR.,
          Defendant-Appellee. ) JUDGE


For Appellant                    For Appellee

THOMAS C. JESSEE[1]              MARGARET B. FUGATE
Jessee & Jessee                  Anderson, Fugate, Givens & Belisle
Johnson City, Tennessee          Johnson City, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                              Susano, J.

---

[1]Mr. Jessee did not represent Mr. Davis at trial.

This is a divorce case. The core issues on appeal focus on the trial court's classification and division of property. The plaintiff, Jack Davis ("Husband"), appealed, claiming that the trial court erred in classifying certain property as marital property when the property should have been classified as his separate property; that the trial court awarded his wife, Clanetta Davis ("Wife"), a disproportionate share of the marital property; and that the trial court failed to adequately direct the work of the court-appointed special master. Wife, for her part, argues that she is entitled to a larger share of the marital property and that the trial court undervalued certain marital assets to her disadvantage. As an additional issue, she seeks attorney's fees for a frivolous appeal.

## I. *General Overview*

The trial court's judgment dissolved a marriage of 33-plus years. At the time of trial, Husband was 65 years of age. Wife was 59. The trial court found that Husband had physical problems "which would likely make it impossible [for him]...to engage in gainful employment." Wife was in relatively good health "and should be able to work several more years." She is a school teacher by profession. The sole contested issue at trial was the classification and division of the parties' property.[2]

---

[2]The parties stipulated to the existence of grounds for divorce pursuant to the provisions of T.C.A. § 36-4-129 (1996 Repl.). Neither party sought alimony. There were no issues pertaining to the parties' two children, both of whom are adults.

## II. *Trial Court's Judgment*

This case was tried before Judge Thomas J. Seeley, Jr. Judge Seeley filed an exhaustive, 34-page memorandum opinion, in which he addressed each asset of the parties.  He also examined the division-of-property factors found at T.C.A. § 36-4-121(c) with particular reference to the facts of this case.  He segregated the parties' property into the separate property and marital property categories; awarded the separate property to the party to whom it belonged; and then divided the marital property equally between the parties.

The final judgment, as subsequently modified by the trial court, includes a detailed recapitulation schedule, which is attached as an exhibit to this opinion.  In summary, the trial court awarded the parties' property as follows:

### Husband

| | |
|---|---|
| Separate Property | $  686,917.07 |
| 50% of Marital Property | 552,423.24 |
| | $1,239,340.31 |

### Wife

| | |
|---|---|
| Separate Property | $   26,761.00 |
| 50% of Marital Property | 552,423.23 |
| | $  579,184.23 |

The trial court was faced with a Herculean task in this case of tracing assets, classifying property as separate or marital, and attempting to unravel relatively complicated financial transactions and dealings.  Its task was made more

3

difficult by the machinations of Husband, as described by the trial court in its excellent memorandum opinion:

> The number of real properties involved (presently some 20 parcels) and the different manners in which title was acquired and exists (deed; inheritance; *inter vivos* gift; being held singly, jointly, in partnership and some in trust) make classification difficult. Jack Davis tried to retain certain properties and monies as his separate property. However, he commingled his separate funds with marital funds and used marital funds along with gifted funds to acquire some of the properties he now claims as his separate property. Further, Jack Davis attempted to secrete several hundred thousand dollars ($452,000) prior to his filing for divorce. He gave $200,000 to one friend in a plastic valise; he gave another $100,000 to a second friend in a paper sack; and placed $26,500 in his automobile's spare tire well. He put $25,500 in a roll of carpet, which money disappeared. He claims to have done this because he was concerned that his son's possible involvement with drugs would subject all Mr. Davis' property to seizure by the government. The Court considers this statement to be disingenuous. On the contrary, Fred Steward, the friend to whom Jack Davis gave $100,000, testified that Mr. Davis asked him to keep the money because he "foresaw a divorce" with Ms. Davis. This is, the Court believes, the true reason Mr. Davis attempted to hide those monies. Mr. Davis established and moved monies in and out of some 42 different bank accounts between July 10, 1992, and December 31, 1995, in this continuing effort. The Court felt it necessary to appoint John Sanders, attorney in Johnson City, as a Special Master to take control of certain monies and to attempt to track the financial maneuvering of Jack Davis, which were so numerous and convoluted that Sanders requested the Court for authorization to hire an accountant for assistance. David Frizzell, C.P.A., was hired. Mr. Davis kept voluminous records and notes regarding his transactions; however, even relying solely on his word as to how some monies were spent during the referenced three and one-half year period, including the disappearance of the $25,500, Jack Davis still cannot account for over $83,000. The total amount for which Mr. Davis has no

> documentation was $183,285.23.  Mr. Davis'
> actions in trying to secrete his holdings and
> his financial (banking) manipulations have
> frustrated the Court's duty to classify
> properties as separate or marital and then
> equitably divide the parties' marital assets.


III.  *Standard of Review*


Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise."  Rule 13(d), T.R.A.P.; ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993); ***Catlett v. Chinery***, 952 S.W.2d 433, 434 (Tenn.App. 1997).  The trial court's conclusions of law are not accorded the same deference.  ***Campbell v. Florida Steel Corp.,*** 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).  Our review is tempered by the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal.  ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn.App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 567 (Tenn.App. 1991).


IV.  *Applicable Law*


The legal principles that control the division of property in a divorce case are well-stated by the Middle Section

of this Court in the case of **Batson v. Batson**, 769 S.W.2d 849

(Tenn.App. 1988):

> Tennessee is a "dual property" jurisdiction because its divorce statutes draw a distinction between marital and separate property.  Since Tenn.Code Ann. § 36-4-121(a)(Supp. 1988) provides only for the division of marital property, proper classification of a couple's property is essential. *See 3 Family Law and Practice* § 37.08[1](1988).  Thus, as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably. *See* 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 183-84 (2d ed. 1987).
>
> Tenn.Code Ann. § 36-4-121(b) contains the ground rules for classifying property, and little elaboration is needed beyond the statute itself.
>
> *    *    *
>
> In accordance with this statute, marital property includes the increase in value of separate property "if each party substantially contributed to its preservation and appreciation." **Ellis v. Ellis**, 748 S.W.2d 424, 426-27 (Tenn. 1988); **Crews v. Crews**, 743 S.W.2d 182, 189 (Tenn.Ct.App. 1987).

*Id*. at 856.

> Tenn.Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault.  It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. **Fisher v. Fisher**, 648 S.W.2d 244, 246 (Tenn. 1983).  Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal, **Edwards v. Edwards**, 501 S.W.2d 283, 288 (Tenn.Ct.App. 1973), and should be presumed to be proper unless the

6

> evidence preponderates otherwise. **Lancaster
> v. Lancaster**, 671 S.W.2d 501, 502
> (Tenn.Ct.App. 1984); **Hardin v. Hardin**, 689
> S.W.2d 152, 154 (Tenn.Ct.App. 1983).
>
> A trial court's division of marital property
> is to be guided by the factors contained in
> Tenn.Code Ann. § 36-4-121(c).

**Id**. at 859.  We will now apply these principles to the facts of this case.

V.  *Husband's Issues*

A.  *Unicoi County Farm*

The parties were married on June 22, 1962.  In October, 1977, the parties moved from Bristol to a farm in Unicoi County. As the trial court noted, this property "was acquired by [Husband] from [his] family members in 1968 through a combination of deeds, litigation and inheritance."  The property was titled solely in Husband's name.  Over the years, the property was improved.  When the parties first moved to the farm, they lived in a "'shack' with no indoor plumbing" while their new residence was being built.

Husband contends that only $80,000 of the value of the farm found by the trial court, *i.e.*, $225,000, should have been designated as marital property.  He argues that the trial court should have classified $145,000 of the farm's value as separate property rather than the $35,000 found by the trial court.  He takes this position because, in the words of his brief, "the farm was inherited by [him] to begin with."  He concedes that Wife is

7

entitled to share in that portion of the value of the farm related to improvements to the property "acquired by monies earned during the marriage." However, he claims that the bulk of the appreciation in value of the property should be classified as Husband's separate property because, so the argument goes, Wife did not substantially contribute to the preservation and appreciation of the underlying separate property component of the total value. In other words, Husband urges us to find that the only marital component of the property's value is composed of the additions to its value occasioned by the infusions of marital income during the marriage and the increase in value of those additions. He pegs this number at $80,000.

The trial court found that as of 1968 -- when the property was originally acquired by Husband from his family -- the underlying separate property interest in the farm was properly valued at $35,000. The evidence does not preponderate against this finding. In fact, Husband testified that he paid only $22,500 when he acquired the entire interest in 1968. While one of the appraisers assessed the value of the farm in 1968 at $52,500, both of the experts who testified regarding its value "stated that any appraisal of its value in 1968 would be highly speculative."

The trial court found that Wife "substantially contributed to [the farm's] preservation and appreciation." *See* T.C.A. § 36-4-121(b)(1)(B). The court noted as follows:

> Thus, the total property appreciated $190,000
> over the years since 1968. Certainly a good

8

> part of that appreciation would be simply
> from inflation. However, without proper
> maintenance and improvement, the farm would
> not have increased nearly so much. Both
> parties contributed to such improvements and
> maintenance. The only substantial farm
> activity conducted by either party was Ms.
> Davis' cattle raising. The grazing of cattle
> contributes to the maintenance of the farm
> and its appreciation in value. Ms. Davis
> also did some plowing; did the gardening;
> helped put up hay and did fencing. According
> to both Mr. Davis and a neighbor, Lloyd
> Garland, Ms. Davis was a "hard worker."
> Clanetta Davis has made substantial
> contribution to the preservation and
> appreciation of the farm.

The evidence does not preponderate against the trial court's finding that all of the increase in value beyond the initial separate property interest of $35,000 is marital property.

### B. Bristol Property

The trial court concluded that property in Bristol worth $170,000 was properly classified as marital property. Husband takes the position that a portion of this property -- valued at $46,000 -- should be classified as separate property because the property "was purchased by [Husband] solely from monies given him by his uncle." He claims that this $46,000 increment is his separate property because it was "acquired...by gift, bequest, devise or descent." See T.C.A. § 36-4-121(b)(2)(D).

The trial court considered Husband's contention with respect to the Bristol property but found that there was "insufficient proof to substantiate" his testimony that his uncle

9

paid for a portion of this property. This dispute presented an issue of credibility to be resolved by the trial court. It resolved that issue against Husband. There is nothing in the record that is so compelling as to persuade us to ignore the trial court's credibility determination. This being the case, we cannot say that the evidence preponderates against the trial court's determination that the Bristol property is entirely marital property.

### C. Life Insurance Cash Value

The trial court found that Husband's life insurance policy, which had a cash value of $14,000, is a marital asset. Husband claims that the policy was purchased ten years prior to the parties' marriage and that $3,050 of the value of this asset at the time of the divorce should be classified as separate property. This argument is said to be based on "[Husband's] testimony"; however, the brief does not cite us to the page of the record where such testimony can be found. Suffice it to say that the record does not support Husband's position. The evidence does not preponderate against the trial court's classification of the entire cash value of the life insurance as marital property.

### D. Miscellaneous Cash Funds

The trial court found that the parties owned five bank accounts, the total value of which amounted to $13,740.63. While these accounts were all in Husband's name, the trial court concluded that they were marital property because of

10

"commingling." These accounts are reflected in a report from David Frizzell, the C.P.A. who was hired by the special master.

Husband objects to the trial court's finding that these bank accounts were a part of the marital estate because, according to Husband's brief, they "did not exist at the time of trial." The record does not support Husband's contention. In view of Mr. Frizzell's report, we cannot say that the evidence preponderates against the trial court's determination with respect to these miscellaneous bank accounts.

### E.  Special Master's Report

Husband contends that the trial court erred in allowing the special master "to file a report which did not encompass periods after 1993." Even if this was error -- and we do not concede that it was -- it did not affect the outcome of this trial. The trial court had a full hearing in this matter. That hearing extended over four days and generated ten volumes of testimony and 98 exhibits. There is nothing in the record that even remotely suggests that the trial court refused to receive any relevant evidence. On the contrary, the trial court heard some 19 witnesses, and it is obvious that the parties were afforded an opportunity to fully present their respective positions. If Husband thought that the special master's report was incomplete, he could have supplemented it by presenting relevant evidence during the four-day trial.

There is no reversible error pertaining to the report of the special master.  *See* Rule 36(b), T.R.A.P.[3]

## VI.  *Division of Marital Property*

Both of the parties contend that the trial court's division of property is not equitable.  Husband suggests a different division.  His suggestion is based partially on his position that the court erred in classifying certain assets as marital rather than as his separate property.  We have previously held that the trial court's classifications are not in error.  Hence, to the extent that Husband's proposal is based on these classifications, it is rejected.  To the extent his proposal simply suggests a different division of what the trial court found to be marital assets, we do not agree that it is appropriate to modify the division decreed by the trial court.  A trial court has wide discretion in dividing marital property. **Watters v. Watters**, 959 S.W.2d 585, 590 (Tenn.App. 1997).

Wife, on the other hand, contends that the trial court erred in selecting certain values which -- while testified to by one of the experts -- were to her disadvantage.  She also contends that the trial court, when it divided the parties' marital property, should have considered the fact that Husband dissipated marital assets.

---

[3]Rule 36(b), T.R.A.P., provides as follows:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment...

12

The trial court's findings as to the value of the various assets are within the range of the "value" testimony presented at trial. *See* **Watters**, 959 S.W.2d at 589. In this case, we find no error in the trial court's determinations, *i.e.*, the evidence does not preponderate against these findings.

As to the trial court's overall division of property, we do not find that the evidence preponderates against the trial court's findings.

VII. *Frivolous Appeal Claim*


Wife claims that Husband's appeal is frivolous. She seeks damages pursuant to the provisions of T.C.A. § 27-1-122.[4] We do not find that Husband's appeal is frivolous. This issue is found adverse to Wife.


VIII. *Conclusion*


The judgment of the trial court is affirmed with costs on appeal being taxed against the appellant. This case is remanded for enforcement of the trial court's judgment and collection of costs assessed below, all pursuant to applicable law.


                                        _____
                                        Charles D. Susano, Jr., J.


CONCUR:


_____
Herschel P. Franks, J.


_____
William H. Inman, Sr.J.


_____

[4]T.C.A. § 27-1-122 provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

14